**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:08CV486-C**

| | |
|---|---|
| **WINDSOR FINE JEWELERS, LLC,** ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |
| **WINDSOR JEWELERS, INC.,** ) ) | |
| Defendant. ) ) | |

**THIS MATTER** is before the Court on the "Defendant's Motion to Dismiss" (document #9) and "Memorandum ... in Support ..." (document #10), both filed December 1, 2008; and the Plaintiff's "Response ... " (document #11) filed December 18, 2008. On December 30, 2008, the Defendant filed a "Notice" that the Defendant would not file a reply brief, but instead would stand on its principal brief. See document #12.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendant's Motion to Dismiss be granted, as discussed below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This is an action brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, in which the Plaintiff Windsor Fine Jewelers, Inc. seeks a declaratory judgment that it has

not infringed the Defendant Windsor Jewelers, Inc.'s state-registered trademark.

According to records maintained by the North Carolina Secretary of State, the Plaintiff is a North Carolina Limited Liability Company that was formed on or about June 2, 2008, and that maintains its principal place of business in Augusta, Georgia.

The Defendant is a North Carolina Corporation that has operated a retail jewelry store in Winston-Salem, North Carolina under the name "Windsor Jewelers" since 1986. The Defendant first used and registered its "Windsor Jewelers" trademark under the North Carolina Trademark Registration Act in the 1980's and has subsequently renewed its registration with the State of North Carolina, most recently on October 22, 2004.[1] The Defendant advertises, maintains a customer base, and conducts business throughout the State of North Carolina. Since 1993, the Defendant has sold more than $6.9 million of merchandise in North Carolina excluding the Winston-Salem market. Approximately $4.825 million of these sales were made in the Charlotte area.

The evolution of the Plaintiff's existence began sometime in December 2006 when the investment company Alpine Investors, LP (hereinafter "Alpine"), a Delaware Limited Partnership, and one of its subsidiaries, Windsor Jewelers, LLC (hereinafter "Windsor Georgia"), an Augusta, Georgia-based jewelry store, acquired the three Charlotte retail locations of "Lions Jewelers" (hereinafter "Lions").

In mid-December 2006, and prior to Alpine and Windsor Georgia's purchase of Lions, Donald Thompson, a Member and Manager of Windsor Georgia, approached the Defendant regarding the potential sale of the Defendant to Alpine to thereafter be operated under the retail

---

[1] It is undisputed that a New York corporation also named Windsor Jewelers, Inc., which has no involvement in these parties' businesses or their present dispute, obtained federal trademark registration for the "Windsor Jewelers" mark in 1998.

designation "Windsor Jewelers."

On February 9, 2007, Alpine issued a written purchase proposal to the Defendant offering a purchase price of $4.9 million that included "$500,000 for all rights to the Windsor Jewelers name currently owned by the [Defendant]."

The Defendant rejected Alpine's offer and Alpine thereafter offered to purchase only the "Windsor Jewelers" name, which the Defendant indicated it would sell for $750,000. Alpine rejected the Defendant's offer, and allegedly informed the Defendant that it planned to operate its recently-acquired Charlotte retail stores under the "Lions Jewelers" name.

On June 2, 2008, Alpine and Windsor Georgia registered the Plaintiff with the North Carolina Secretary of State. On August 7, 2008, the Defendant first learned that the Plaintiff, Alpine, and Windsor Georgia planned to operate their Charlotte retail stores under the name "Windsor Fine Jewelers." The Defendant, by and through counsel, promptly sent a cease-and-desist letter to Mr. Thompson. On October 16, 2008, defense counsel also sent a letter to Plaintiff's counsel asserting ownership of the name and requesting that the status quo be maintained in lieu of the Defendant seeking a Temporary Restraining Order in state court. In particular, the Defendant requested that the Plaintiff not begin any advertising campaigns using the name "Windsor Jewelers" or "Windsor Fine Jewelers." It is undisputed that none of the Defendant's letters mentioned the Lanham Act or any other federal law, claim, or right but, instead, referenced only the Defendant's rights under state "trademark laws."

Notwithstanding the Defendant's request, the Plaintiff proceeded to advertise within North Carolina as "Lions Jewelers soon to be Windsor Fine Jewelers."

On October 24, 2008, the Plaintiff filed the subject Complaint, alleging federal-question

subject matter jurisdiction and seeking relief pursuant to the Federal Declaratory Judgment Act. Specifically, the Plaintiff seeks a declaratory judgment that its use of "Windsor Fine Jewelers" does not violate the Defendant's trademark and that the Defendant does not have exclusive rights to the use of "Windsor Jewelers" in the Charlotte area.

On November 5, 2008, the Defendant in the instant action filed a "Verified Complaint and Rule 65(b) Motion for a Temporary Restraining Order" in the Mecklenburg County Superior Court naming the Plaintiff, Windsor Georgia, and Alpine as Defendants and alleging claims under the North Carolina Trademark Registration Act, as well as state law claims for fraud and unfair and deceptive trade practices.

On November 10, 2008, the Defendants in the state court action filed a Motion to Dismiss the claims against them based on the prior pending action doctrine.

On November 12, 2008, the state court action was assigned to the Honorable Albert Diaz, Special Superior Court Judge for Complex Business Cases.

On November 14, 2008, Judge Diaz held a hearing on Windsor Jewelers, Inc.'s Rule 65(b) Motion for a Temporary Restraining Order, and on November 19, 2008 entered an Order granting Windsor Jeweler Inc.'s Motion. See "Order," Exhibit 4 to Defendant's "Memorandum ... in Support ..." (document #10). In his Order, Judge Diaz found, among other things, that the "Plaintiff has shown a likelihood of success on the merits because it holds a valid trademark under the NC Trademark Registration Act ... its use of the mark in the same geographic area as that of the alleged infringer is more than de minimis ... and Defendant's use of a similar mark is likely to cause confusion among customers." Id. at 1. Judge Diaz went on to find that the "Defendants' intent to confuse the consuming public is clear ... as they were aware of Plaintiff's trademark registration in

North Carolina ... and, indeed, attempted to purchase the Plaintiff's business and mark before announcing that they intended to change the name of their NC-based stores to Windsor Fine Jewelers." Id.

On December 1, 2008, the Defendant filed its Motion to Dismiss the federal Complaint for lack of subject-matter jurisdiction, contending that the Plaintiff has failed to raise a federal question or otherwise demonstrate that at the time it filed the subject Complaint it was under a reasonable apprehension of suit under federal law.

In its Response, the Plaintiff maintains that because the cease-and-desist letters referenced the Defendant's rights under "trademark laws" (emphasis added) and because the language of the North Carolina Trademark Registration Act, N.C. Gen. Stat. § 80-1.1 et. seq., tracks the language of the Lanham Act, 15 U.S.C. § 1125, et. seq., those letters placed the Plaintiff in reasonable apprehension of suit under federal law.

On December 10 and 19, 2008, respectively, Judge Diaz conducted hearings on the state court Defendants' Motion to Dismiss and the state court Plaintiff's Motion for a Preliminary Injunction, but has not issued a ruling on either motion. The parties' counsel have informed chambers' staff telephonically that Judge Diaz has extended the Temporary Restraining Order pending his ruling on the state court Plaintiff's Motion for a Preliminary Injunction.

The Defendant's Motion has been briefed as set forth above and is, therefore, ripe for disposition.

## II. DISCUSSION

The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for

subject matter jurisdiction, a case must be dismissed. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998). Accord Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The party seeking federal jurisdiction, in this case, the Plaintiff, has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

It is well established that "[t]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000), citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accord Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002) ("In general, an action filed in state court may be removed to federal court only if it might have been brought in federal court originally"). There is no dispute that the citizenship of the parties is not diverse and, therefore, that the basis for federal subject matter jurisdiction, if any, must arise under what is commonly called "federal question" jurisdiction.

As the Fourth Circuit has stated:

Title 28 U.S.C. § 1331 provides that district courts have subject matter jurisdiction of every civil action that "arises under the Constitution, laws, or treaties of the United States." This means that Congress has given the lower federal courts jurisdiction to hear only those cases in which a well-pleaded complaint establishes <u>either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law</u>.

Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 606-07 (4th Cir. 2002) (emphasis added).

Moreover, "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action [and t]he well-pleaded

6

complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint." Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 369-70 (4th Cir. 2001), citing Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986).

In a declaratory judgment setting, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff. Cardinal Chemical Co. V. Morton Intern, Inc., 508 U.S. 83, 94 (1993); Columbia Gas Trans. Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001); Volvo Trademark Holding Aktiebolaget v. AIS Constr. Equip., 162 F. Supp. 2d 465, 469 (W.D.N.C. 2001). However, in Cardinal Chemical Co., 508 U. S at 94, the Supreme Court stated that "the [jurisdictional] requirements ... are of course no less strict under the Declaratory Judgment Act than in case of other suits." In other words, in such an instance subject matter jurisdiction is only proper where "the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." Columbia Gas Trans. Corp., 237 F.3d at 370.

Although the North Carolina Trademark Registration Act states that its purpose is "to provide a system of State trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946…" and that the "construction given the federal act should be examined as persuasive authority for interpreting and construing this Article," N.C. Gen. Stat. § 80-1.1, this provision is not sufficient to support a claim "arising under" federal law.

Indeed, it is well settled that federal question jurisdiction does not arise when a federal statute simply provides a standard of care or conduct, or otherwise refers to federal authority as evidence

7

that a defendant violated state law. See Moore v. Chesapeake & O. Ry. Co., 291 U.S. 205, 214 (1934) (upholding the lower court's exercise of jurisdiction based on diversity, but finding that the complaint did not raise a federal question where state law incorporated a standard imposed by a federal statute); ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of Montana, 213 F.3d 1108, 1113 (9th Cir. 2000) ("[t]he fact that ARCO's complaint makes repeated references to CERCLA does not mean that CERCLA creates the cause of action under which ARCO sues"); Hill v. Marston, 13 F.3d 1548, 1550 (11th Cir. 1994) (the "violation of a federal standard as an element of a state tort recovery does not change the state tort nature of the action"); Greene v. General Motors Corp., 261 F.Supp.2d 414, 418 (N.C.W.D. 2003) (case remanded to state court where complaint referenced the warranty standards contained in the Magnuson-Moss Act only as evidence that defendants had violated state law). and Kravitz v. Homeowners Warranty Corp., 542 F.Supp. 317, 319 (E.D. Pa. 1982).

In Kravitz, for example, where the plaintiff homeowners contended that the defendant's failure to comply with Magnuson-Moss warranty standards entitled them to contract rescission under state law, the court held that the plaintiffs' cause of action "was rooted in" state law and that the state courts "[were] fully competent to interpret the Magnuson-Moss" warranty standards, and remanded the matter to state court. 542 F. Supp at 319-20.

Applying these legal principles to the Plaintiff's Complaint, clearly there is no basis for exercising federal question jurisdiction, that is, neither party has, in this or the state court action, pled a claim or raised a defense arising under the Lanham Act or any other federal statute, nor do any of their asserted claims and/or defenses necessarily depend on the resolution of any question of federal law, much less a substantial question of federal law. Moreover, the prior registration of the

8

"Windsor Jewelers" federal trademark by a New York corporation that has no connection to these parties, their businesses, or their present dispute, clearly limits the scope of the parties' dispute to their rights under state law to use the "Windsor Jewelers" mark in North Carolina.

In other words, at most, the record shows that Judge Diaz may choose to consider federal precedent construing the Lanham Act as "persuasive authority" in disposing of the Defendant's state trademark claims. As the district court concluded in Kravitz, state courts are fully competent to make such determinations, which do not give rise to grounds for federal subject matter jurisdiction. Accord 542 F. Supp at 319-20.

Accordingly, the undersigned will respectfully recommend that the Defendant's Motion to Dismiss for lack of subject matter jurisdiction be granted.

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Court's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Defendant's Motion to Dismiss" (document #9) be **GRANTED,** that is, that the Complaint be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections

to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; to the Honorable Albert Diaz, North Carolina Business Court, Mecklenburg County Courthouse, 832 East Fourth Street, Suite 9600, Charlotte, North Carolina 28202; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED**.

Signed: February 12, 2009

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge